UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN L. DOBROWSKI,

    Plaintiff,

v.                                                              Case No:  2:12-cv-337-Ftm-SPC

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

This matter comes before the Court on Plaintiff's Memorandum of Law in Opposition to the Commissioner's ("Commissioner") Decision Denying Plaintiff Disability Insurance Benefits (Doc. #15) filed on November 8, 2012.  A Consent Form (Doc. #11) was signed by the Parties indicating their agreement for jurisdiction in this matter to be exercised by the United States Magistrate Judge and filed on September 7, 2012.  The Parties' consent was approved by the District Court on December 14, 2012. (Doc. #18).  The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #21) on January 28, 2013.  Thus, the Motion is now ripe for review.

## FACTS

### *Procedural History*

On February 20, 2008, Plaintiff John L. Dobrowski applied for a period of disability and disability insurance benefits.  (Tr. 108-09, 157).  He alleged disability beginning on May 16, 2006, due to groin and left leg pain caused by complications from hernia surgery, a hearing

impairment, and acid reflux disease. (Tr. 108, 127, 133). He was last insured on June 30, 2008. (Tr. 110, 157).[1]

The agency denied Plaintiff's application initially (Tr. 54-55, 58-60) and upon reconsideration. (Tr. 56-57, 61-62). Plaintiff then requested a *de novo* hearing before an administrative law judge ("ALJ"). (Tr. 63). After a hearing (Tr. 30-53), on May 4, 2010, ALJ Apolo Garcia issued a decision finding Plaintiff was not disabled on or before June 30, 2008. (Tr. 15-26). Plaintiff sought review of the ALJ's decision (Tr. 14), but the Appeals Council denied his request (Tr. 1-4). Having exhausted all administrative remedies, Plaintiff filed this Complaint with the Court on June 25, 2012. Thus, the case is ripe for review under 42 U.S.C. § 405(g).

## *Plaintiff's History*

Plaintiff was 45-years old on the date he was last insured. (Tr. 108, 110, 122). He has a high school education. (Tr. 131). Although Plaintiff has past relevant work as a laborer (Tr. 128), he had no reported earnings from 1989 to 1997, 1999, or 2005. (Tr. 110-15).

## *Medical History*

Plaintiff was lifting on the job when he suffered an accident. Thereafter, he developed hernias. A North Florida Regional Medical Center discharge summary dated May 18, 2006 shows that Plaintiff had a repair of his bilateral inguinal hernia using Prolene hernia system mesh, performed on May 17, 2006. In the recovery room, however, Plaintiff complained of numbness of his leg and the feeling that the thigh was about to explode. When he was asked to get up, his leg collapsed. Plaintiff was then taken back to the operating room to have the groin

---

[1] In order to be entitled to Title II benefits, Plaintiff must show that he became disabled on or before the expiration of his disability insured status. See 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.131; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

2

re-opened. Doctors then removed all of the hernia system and replaced it with a PerFix plug Marlex mesh patch and closed. Plaintiff was discharged home with a prescription for Percocet.

About three weeks post-operation, Plaintiff was moving laterally at home and felt a pop. He had recurrence of pain and thought he had recurrence of a left-sided hernia. He was subsequently re-examined by his surgeon and felt not to have a recurrence of his hernia. Since that time he had pain in the groin region that radiated down the anterior front thigh. He underwent a course of physical therapy.

Plaintiff developed a mild degree of left femoral neuralgia. His doctor determined that he needed a left femoral nerve block with steroid and lidocaine patches and creams. On November 13, 2007, a Consultation by Deaconess Health System notes that Plaintiff has left quadriceps weakness and burning pain in the area of the distribution of the femoral nerve on the left. The doctor had been doing left femoral nerve blocks and trigger point injections to the incision area, with a "mixed degree of relief" for Plaintiff. (Doc. #10-7, page 197).

Interventional Medical Associates, Robert G. Valentine, Jr., M.D. on February 12, 2009, noted that he doubted femoral neuropathy and extremity pain. On June 8, 2009, Dr. Valentine noted that he doubted serial blocks would be of great benefit. (Doc. #10-7, page 244). On July 10, 2009, noted that a nerve block did help, but pain returned to baseline. As a result, he doubted that blocks would be of great benefit. (Doc 10-7, pages 241-42). On August 7, 2009, Dr. Valentine reports trial of Savella was not helpful for the neuropathic pain. The doctor discussed trying Topamax. Plaintiff indicated that he wanted to avoid surgery unless there were no other options. He had not obtained the TENS unit at that time. He had obtained an NCS/EMG. The report states no abnormality detected. (Doc. #10-7, page 240). On August 20, 2009, Dr. Valentine's record noted that Plaintiff stated that the trial of Topemax was not helpful for the

neuropathic pain. (Doc. #10-7, page 237). On October 30, 2009, Dr. Valentine noted that he doubted that serial blocks would be of great benefit. (Doc. #10-7, page 234).

### *Administrative Law Judge's Decision*

After careful consideration of the record, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 30, 2008, through the date of the ALJ's decision. (Tr. 15-26). To reach this conclusion, the ALJ conducted the five-step evaluation process for determining disability pursuant to 20 C.F.R. 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of May 16, 2006, through his date last insured of June 30, 2008. (Tr. 20). See 20 C.F.R. § 404.1520(a)(4)(i). At steps two and three, the ALJ found Plaintiff had severe impairments, namely, bilateral inguinal hernias and status post inguinal hernia surgeries, but did not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. 20). See 20 C.F.R. § 404.1520(a)(4)(ii), (iii).

The ALJ then proceeded to assess Plaintiff's residual functional capacity (RFC). See 20 C.F.R. § 404.1520(a)(4), (e). The ALJ found that Plaintiff could perform light work,[2] but should be limited to standing for 1 hour and walking for 30 minutes at a time with the option to sit or stand to relieve pain. (Tr. 20-21). In making his decision, the ALJ found that the medical evidence of record did not support Plaintiff's statements about the severity of his pain or his limitations. (Tr. 21-24). Accordingly, the ALJ determined that Plaintiff's allegations of disabling pain were not credible. (Tr. 21).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling (SSR) 83-10 (http://www.ssa.gov/OP_Home/rulings/di/01/SSR83-10-di-01.html); see 20 C.F.R. § 404.1520(e).

As noted above, Plaintiff had past relevant work as a laborer. (Tr. 128). However, with the benefit of the testimony of a Vocational Expert (VE) (Tr. 47), the ALJ found, at step four, that Plaintiff was unable to perform his past relevant work. (Tr. 24). See 20 C.F.R. § 404.1520(a)(4)(iv).

The ALJ therefore proceeded to the fifth step to determine whether, given Plaintiff's RFC, age, education, and work experience, Plaintiff could perform a significant number of other jobs in the national economy. (Tr. 20-24). See 20 C.F.R. § 404.1520(a)(4)(v). The ALJ concluded, again with the benefit of VE testimony (Tr. 47-49), that Plaintiff was capable of performing a significant number of light jobs in the national economy—such as Cashier II, Courier (Deliverer/outside), and Parking Lot Attendant—and therefore was not disabled from May 16, 2006, the alleged onset date, through June 30, 2008, the date last insured. (Tr. 24-25).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm., 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[3] 20 C.F.R. §§ 404.1520(a), 404.920(a).  The

---

[3] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
  *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
  *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
  *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
  *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

5

ALJ's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the ALJ's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the ALJ's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). If the ALJ's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

*Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f).

6

twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the Plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505-404.1511.

In this case, the Plaintiff asserts that the ALJ erred because the ALJ made an improper credibility assessment and violated the Eleventh Circuit pain standard. With regard to pain, Plaintiff testified as follows:

> He has severe pain in his left groin and left leg. He said the pain averages 8 on a scale of 1-10. He reported receiving physical therapy after his surgery. His most comfortable position is lying on the bed or couch with his left leg extended. The claimant said he had nerve blocks from his pain management doctor, but the relief was minimal and temporary, so the nerve blocks were stopped. Mr. Dobrowski said he could sit for an hour and stand for five minutes to wash dishes. He said that he spends at least six hours per day lying down with his left leg extended. According to the claimant, minimal activity such as standing to wash dishes or bending over to pick up something will trigger pain. He watches TV, goes to the store and goes to doctors' appointments.

(Tr. 21).

Pain is a non-exertional impairment. Phillips v. Barnhart, 357 F.3d 1232, 1243 n.11 (11th Cir. 2004). Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (*e.g.* medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). When a claimant attempts to establish disability based on his subjective complaints such as pain, he must provide evidence of an underlying medical condition and "either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002); see 20 C.F.R. § 404.1529. The ALJ must consider all of a claimant's statements about his

7

symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part pain standard. Foote, 67 F.3d at 1560.

The pain standard requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain or other, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote v. Chater, 67 F.3d 1553, 1561-1562 (11th Cir. 1995); Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)).

The undersigned notes that the ALJ articulated several reasons for why Plaintiff's complaints of severe pain were not credible. The ALJ stated:

> Mr. Dobrowski testified that he has severe pain in his left groin and left leg. He said the pain averages 8 on a scale of 1-10. He reported receiving physical therapy after his surgery. His most comfortable position is lying on the bed or couch with his left leg extended. The claimant said he had nerve blocks from his pain management doctor, but the relief was minimal and temporary, so the nerve blocks were stopped. Mr. Dobrowski said he could sit for an hour and stand for five minutes to wash dishes. He said that he spends at least six hours per day lying down with his left leg extended. According to the claimant, minimal activity such as standing to wash dishes or bending over to pick up something will trigger pain. He watches TV, goes to the store and goes to doctors' appointments.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> * * *
>
> The medical evidence of record does not support a conclusions that claimant is disabled. The evidence does not support his allegations of his pain or his limitations. The claimant has admitted receiving good pain relief by using a TENS Unit. No physician has found the claimant is disabled, and no physician has imposed significant limitations upon the claimant. The medical evidence supports a finding that the claimant is able to perform a reduced range of light work.

> The claimant is able to drive and shop. He is independent in his activities of daily living. These activities support a finding that the claimant is able to perform a reduced range of light work.
>
> The claimant's earnings record is deplorable. Mr. Dobrowski had no reported earnings from 1989-1997. He had no earnings in 1999 or 2005. The claimant had only been employed for one month when he sustained his hernia injury in 2006. The claimant's earnings record shows that the claimant has engaged in a decades' long pattern of unemployment, underemployment and or unreported earnings. The claimant's current unemployment is not due to disability but is a component of a longitudinal pattern of unemployment, underemployment and or unreported earnings.

(Tr. 21, 23-24). Plaintiff argues that under the pain standard, pain testimony, such as Plaintiff's, supported by medical evidence of a condition or conditions, such as his intractable neuropathic pain, which is normally the cause of severe pain and periodic incapacity, and which can reasonably be expected to cause the pain and incapacity as alleged by Plaintiff, is itself enough for a finding of disability.

Plaintiff's argument is not well taken. Plaintiff contends that the ALJ did not apply the Eleventh Circuit's pain standard and failed to give adequate reasons for discrediting his pain allegations. See Pl's Mem. at 11-15. The ALJ, however, specifically discussed Plaintiff's allegations of severe pain as well as the objective medical evidence and identified substantial evidence to support his decision to find Plaintiff's allegations not fully credible. (Tr. 21-24). See Dyer, 395 F.3d at 1210. The ALJ noted that the medical evidence did not support Plaintiff's testimony of pain averaging 8 on a scale of 1-10 or his allegations of limitations on sitting and standing. (Tr. 21, 23, 37-40). Although Plaintiff had the severe impairments of bilateral inguinal hernias and post-inguinal hernia surgeries, the ALJ determined that the record did not provide objective medical findings to support Plaintiff's allegations of severe pain due to those impairments. (Tr. 20-24). See 20 C.F.R. § 404.1529; Wilson, 284 F.3d at 1225-26; SSR 96-7p; see also Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not

10

reveal the extent to which they limit [claimant's] ability to work or undermine the ALJ's determination in that regard."); Staggers v. Astrue, No. 8:08-cv-1766, 2010 WL 557269, at *5 (M.D. Fla. Feb. 11, 2010) (concluding that the ALJ properly found that the lack of objective findings undermined plaintiff's subjective testimony of a disabling condition).

In making his decision, the ALJ properly relied on the reports and opinions from the medical sources. (Tr. 21-24). See 20 C.F.R. § 404.1527(b), (c). In particular, the ALJ noted that, in May 2008, Plaintiff visited Lance I. Chodosh, M.D., for a consultative examination. (Tr. 23, 203-11). On examination, Dr. Chodosh reported that Plaintiff's abdomen was normal. (Tr. 209). Dr. Chodosh noted that Plaintiff had a full range of motion of all joints, his standing balance and gait were normal, and no muscular atrophy was noted in either leg. (Tr. 209). Dr. Chodosh stated he could not find "any physical evidence of impairment." (Tr. 210). The ALJ reasonably found Dr. Chodosh's assessment to be consistent with the greater weight of the evidence and accordingly assigned it substantial weight. (Tr. 23).

The ALJ also considered the report of John E. Long, M.D., a state agency medical consultant, and gave it significant weight. (Tr. 23). This expert consultant independently reviewed a significant portion of the record and completed a physical RFC assessment. (Tr. 224-31). Dr. Long concluded that Plaintiff could perform light work provided he could periodically alternate between sitting and standing. (Tr. 225). Specifically, Dr. Long determined Plaintiff could: (i) occasionally lift and/or carry 20 pounds; (ii) frequently lift and/or carry 10 pounds; (iii) stand and/or walk for a total of about 6 hours in an 8-hour workday; (iv) sit, with normal breaks, for about 6 hours in an 8-hour workday but must be allowed to periodically alternate sitting and standing to relieve pain or discomfort; and (v) push and/or pull with limitations in lower

extremities. (Tr. 225). Dr. Long did not find any postural, manipulative, visual, communicative, or environmental limitations. (Tr. 226-28).

In addition, the ALJ considered the reports from treating sources. (Tr. 21-23). For example, in May 2007, a year after his hernia surgery, Plaintiff began seeing W. Michael Roberts, M.D., a pain management physician. (Tr. 22, 192). The ALJ noted that Plaintiff complained of left hernia pain, but that, on examination, Dr. Roberts did not detect any hernias. (Tr. 22, 192-93). Dr. Roberts noted that although Plaintiff was not tender over the left lateral femoral cutaneous nerves, he did have significant incisional pain and a moderate amount of femoral neuralgia. (Tr. 193). Plaintiff's lower extremities revealed good peripheral pulses with no edema, and deep tendon reflexes were normal. (Tr. 193). Dr. Roberts found some degree of motor weakness on the left side, but concluded this was effort dependent. (Tr. 193). Plaintiff's station and gait were somewhat normal, and Dr. Roberts detected no sensory deficits. (Tr. 193). Dr. Roberts's impression was incisional neuroma in the left herniorrhaphy scar and a mild degree of left femoral neuralgia, but he noted that Plaintiff seemed to retain strong quadriceps' function. (Tr. 193). Dr. Roberts also noted that Plaintiff had a mild degree of lumbar facet inflammation. (Tr. 193). In making his credibility determination, the ALJ made special note of the fact that no physician found Plaintiff disabled or imposed significant limitations upon him. (Tr. 24). See Robinson v. Astrue, No. 3:11-cv-3102, 2012 WL 4344547, at *6-7 (N.D. Ala. Sept. 13, 2012) (concluding that the ALJ properly discredited plaintiff's pain testimony because no physician had opined that she had limitations that restricted her from all work activity). Further, Robert G. Valentine, Jr., M.D., whom Plaintiff began seeing in June 2008, doubted Plaintiff had femoral neuropathy. (Tr. 22). His impression on examination was extremity pain and likely neuralgia ilioinguinal. (Tr. 22).

In making his credibility determination, the ALJ also considered Plaintiff's daily activities. See 20 C.F.R. § 404.1529(c)(3)(i) (stating that, in evaluating credibility, the agency will consider claimant's daily activities). As the ALJ mentioned, Dr. Chodosh noted that Plaintiff was independent in activities of daily living. (Tr. 207). While the performance of everyday tasks cannot be used to make a determination the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. *See* Moore, 405 F.3d at 1212 (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson, 284 F.3d at 1226 (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise). *See* Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985) (holding that an ALJ may consider the plaintiff's demeanor when making a credibility determination); SSR 96-7p (the inconsistency of the Plaintiff's own statements with information contained in the record bears upon her credibility).

The ALJ correctly concluded that Plaintiff's activities, such as driving and shopping, undermined his allegations of a disabling condition. (Tr. 23-24). Further, the ALJ noted that Plaintiff's credibility was brought into question by the fact that his earnings record is inconsistent, noting that Plaintiff has engaged in a decades' long pattern of unemployment, underemployment, and unreported earnings. (Tr. 24). This too goes to the credibility of the Plaintiff's statements regarding pain.

## **CONCLUSION**

The overall record, discussed above, provides substantial support for the ALJ'S credibility determination. Based on the record as a whole, the ALJ reasonably discounted

Plaintiff's allegations of severe pain and disabling limitations due to complications from hernia surgery and concluded that Plaintiff could perform a reduced range of light work.  Substantial evidence supports the ALJ's conclusion that Plaintiff's allegations of a disabling condition were not credible and that the objective medical evidence did not support Plaintiff's pain complaints.  Thus, the Court affirms the decision of the Commissioner.

Accordingly, it is now

**ORDERED:**

The decision of the Commissioner is **AFFIRMED**.  The Clerk is directed to enter judgment accordingly and thereafter close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this  day of March, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies:  All Parties of Record